IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01056-KLM

NEAH BAY DOWNS DOUGLAS,

      Plaintiff,

v.

MOUNTAIN SONG COMMUNITY SCHOOL,
EVELYN CORTEZ-FORD, in her individual capacity, and
JAMES JACK ROBERTS, in his individual capacity,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant Mountain Song Community School's ("MSCS") **Motion to Dismiss** [#25][1] (the "Motion"). Plaintiff filed a Response [#28] in opposition to the Motion, and Defendant MSCS filed a Reply [#29]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#25] is **GRANTED in part and DENIED in part**.[2]

### I. Summary of the Case[3]

_____

[1] "[#25]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The case has been referred to the undersigned for all purposes [#12] pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c), upon consent of the parties [#11].

[3] All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Plaintiff is the former School Director of Defendant MSCS, a Colorado charter school located in Colorado Springs, Colorado. *Compl.* [#1] ¶¶ 6-7. In connection with the following events, Plaintiff asserts five claims: (1) gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-2, against Defendant MSCS; (2) violation of the Fourteenth Amendment right to intimate association against Defendant MSCS; (3) violation of the Colorado Open Meetings Law, Colo. Rev. Stat. § 24–6–402, against Defendant MSCS; (4) violation of the Colorado Lawful Off-Duty Activities Statute, Colo. Rev. § 24–34–402.5, against Defendant MSCS; and (5) violation of the First Amendment right to free speech and association, against Defendant MSCS and the other two Defendants, Evelyn Cortez-Ford and James Jack Roberts. *Id.* ¶¶ 166-221. In the present Motion [#25], Defendant MSCS seeks dismissal of the first four claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Plaintiff, a female, was a founder of Defendant MSCS and in March 2013 was offered the position of School Director. *Compl.* [#1] ¶¶ 31-32, 42. In the 2013-2014 school year, Bradley McCullough ("McCullough") began teaching at the school as a sixth grade teacher. *Id.* ¶¶ 48-49. In November 2013, he informed Plaintiff that he had feelings for her and wanted to develop a relationship with her, which they did over the course of the following two months, although the Complaint does not provide detail about the parameters of the relationship. *Id.* ¶ 54-55. Both Plaintiff and Mr. McCullough separated from their respective spouses and discussed marrying. *Id.* ¶ 57. Although the two did not discuss their relationship or engage in activities related to their relationship at the school or during work hours, they decided to meet with the school's pedagogical director on January 5, 2014 in order to disclose the existence of their relationship. *Id.* ¶¶ 59-60. On January 6, 2014, Plaintiff also informed School Board Vice President Raj Solanki ("Solanki") of the

relationship.  *Id.* ¶ 63.  On February 5, 2014, Mr. Solanki told Plaintiff that he had decided to call a closed Board meeting on February 6, 2014, in order to discuss Plaintiff and her relationships with her husband and Mr. McCullough.  *Id.* ¶ 86.  On the afternoon of February 6, 2014, before the meeting, Mr. Solanki went to Plaintiff's house and told her that he did not agree with how she had put her professional ambitions ahead of her responsibilities to her family.  *Id.* ¶ 91.  Plaintiff attended the Board meeting later that day and answered the Board's questions.  *Id.* ¶ 95.  Two days later, the Board held another closed meeting to discuss the same issues, and Plaintiff answered more questions.  *Id.* ¶¶ 101, 107-08.  On February 8 or 9, 2014, Mr. McCullough resigned his position with the school.  *Id.* ¶¶ 122, 195.  On February 9, 2014, a Sunday, the Board held another meeting, in which it decided to terminate Plaintiff's employment.  *Id.* ¶¶ 126, 130.[4]

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding.  *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual

---

[4]   Additional material allegations are discussed below in connection with the Court's analysis.

findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.     Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his]

-4-

claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. Analysis

#### A.    Title VII Gender Discrimination

Plaintiff asserts a disparate treatment claim of intentional gender discrimination

under Title VII.  *Compl.* [#1] ¶¶ 166-74.

In *Mormon v. Campbell County Memorial Hospital*, __ F. App'x __, __, No. 14-8090, 2015 WL 7753244 (10th Cir. Dec. 2, 2015), the Tenth Circuit Court of Appeals recently discussed the standard gender discrimination claims must meet to overcome a motion to dismiss.  Although *Mormon* involved a case of gender discrimination under the Fourteenth Amendment, "the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII."  2015 WL 7753244, at *5 n.5 (quoting *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991); *see also, e.g.*, *Mancell v. McHugh*, __ F. App'x __, __, No. 15-2079, 2016 WL 285087, at *1 (10th Cir. Jan 25, 2016) (applying *McDonnell Douglas* framework in the context of a Title VII gender discrimination claim).

"To prove an equal-protection claim based on disparate treatment, a plaintiff must provide either direct evidence of discrimination or prevail under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)."  *Mormon*, 2015 WL 7753244, at *5 (citing *Khalik*, 671 F.3d at 1192).  "Under *McDonnell Douglas*, the plaintiff must first prove a prima facie case of discrimination."  *Id.*  "If she does so, then the burden 'shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action.'"  *Mormon*, 2015 WL 7753244, at *5 (quoting *Khalik*, 671 F.3d at 1192).  "If the defendant provides such a reason, 'the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext.'"  *Id.*

The *Mormon* court next discussed what this framework means in the context of a Rule 12(b)(6) motion to dismiss.  *Mormon*, 2015 WL 7753244, at *5.  "In *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court explained that *McDonnell Douglas*'s prima facie case is 'an evidentiary standard, not a pleading requirement.'" *Id.* (quoting *Swierkiewicz*, 534 U.S. at 510). "As the [Supreme] Court made clear, the standards for employment discrimination set forth in *McDonnell Douglas* simply do not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" *Mormon*, 2015 WL 7753244, at *5 (quoting *Swierkiewicz*, 534 U.S. at 511). "Still, *Twombly* and *Iqbal* require that a plaintiff allege a plausible claim." *Mormon*, 2015 WL 7753244, at *5. The Court "can evaluate [a plaintiff's gender discrimination] claim's plausibility only by considering the prima facie case of discrimination that she would need to prove in court." *Id.* "In pleading a discrimination claim, she need not set forth a prima facie case for discrimination, . . . [b]ut she must allege facts that make such a claim at least plausible." *Id.*

"Thus, to evaluate whether her complaint survives a motion to dismiss, absent direct evidence of discrimination, we examine the first step of the *McDonnell Douglas* framework: the elements [the plaintiff] would need to establish to prove a prima-facie case of gender discrimination." *Id.* at *6 (citing *Khalik*, 671 F.3d at 1192). "That is the only way to assess if her claim is, in fact, plausible." *Mormon*, 2015 WL 7753244, at *6. The plaintiff "must have pleaded a plausible claim of gender discrimination to survive dismissal." *Id.* "The inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged." *Id.* (citing *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990)). "Although the burden-shifting framework is only an evidentiary standard, we must recognize that 'the *McDonnell Douglas* framework should not be applied in a manner that renders it nothing

more than an empty pleading formula, allowing every allegation of employer discrimination to get to a jury.'" *Mormon*, 2015 WL 7753244, at *6 (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1173 (10th Cir. 2007)).

A prima facie case of gender discrimination in a Title VII case generally requires a plaintiff to show "that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Commc'n, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). "While the elements of a prima facie case 'are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.'" *Bennett*, 792 F.3d at 1266 (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

Here, Defendant MSCS argues that Plaintiff fails to provide allegations demonstrating that the challenged action occurred under circumstances giving rise to an inference of discrimination. *Motion* [#25] at 13-19. In response, Plaintiff directs the Court's attention to the following allegations:

> MSCS Board Vice President Raj Solanki conducted a biased and unauthorized investigation of Ms. Douglas. *Compl.* [#1] ¶¶ 65-66, 81-82. The investigation was in violation of MSCS's internal policies. *Id.* ¶ 65. Mr. Solanki relied on false information concocted by Jack Roberts, a school employee with retaliatory animus toward Ms. Douglas. *Id.* ¶¶ 67-78. Mr. Solanki conducted his investigation to undermine Ms. Douglas' authority. *Id.* ¶ 85. Mr. Solanki also decided to hold a secret meeting on February 6, 2014 to discuss Ms. Douglas. *Id.* 86-90. Prior to the February 6 meeting, Mr. Solanki went to Ms. Douglas' house, and while there, he told Ms. Douglas that he didn't agree with how she had put her professional ambitions ahead of her responsibilities to her family, an expression of his view that women should be homemakers and housewives, not professionals. *Id.* ¶¶ 91-92. During the February 6 secret meeting, and again at another meeting on

February 8, 2014, MSCS Board member Martin Schneider engaged in persistent and offensive questioning of Ms. Douglas about her sexual relationships and practices. *Id.* ¶¶ 96-98, 112, 115. Mr. Schneider's inappropriate questions were an attack on Ms. Douglas. *Id.* ¶ 100. Mr. Solanki also made inappropriate, joking comments about Ms. Douglas during the meetings. *Id.* ¶¶ 113-114. Following these meetings, MSCS terminated Ms. Douglas' employment, allegedly for violating MSCS's anti-nepotism policy; however, there was no violation of that policy. *Id.* ¶¶ 130-138. Prior to terminating Ms. Douglas, MSCS had never enforced its anti-nepotism policy, despite knowledge of intimate relationships between employees and between Board members and employees. *Id.* ¶¶ 139, 141-144. MSCS only applied the anti-nepotism policy to a situation where a female employee has supervisory authority over a male employee, ignoring the situation where a male Board member used his authority to influence personnel decisions for his intimate partner. *Id.* ¶¶ 140-144. After Ms. Douglas was terminated, MSCS Board President Rita Issagholian told Ms. Douglas that the Board's investigation was motivated in part by the Board's belief that Ms. Douglas' could not effectively lead the School at the same time she was involved in a relationship with Mr. McCullough. *Id.* 145.

*Response* [#28] at 4-5. Defendant MSCS disputes whether any of these other individuals were similarly situated to Plaintiff, or whether the comments made by various other individuals rise to the level of creating an inference of discrimination. *Motion* [#25] at 13-19. However, Defendants MSCS does not direct the Court's attention to any cases from within the Tenth Circuit with comparable facts in which a motion to dismiss was granted. *See also Reply* [#29] at 6-7. While Plaintiff's allegations may not obviously demonstrate a prima facie case, such is not the standard. *See Mormon*, 2015 WL 7753244, at *5. Rather, she must simply provide allegations which demonstrate that her claim is, at a minimum, plausible. *See id.* The Court finds that, at this early stage of the case, Plaintiff has met this minimum threshold.

Accordingly, the Motion [#25] is **denied** to the extent Defendant MSCS seeks dismissal of Plaintiff's Title VII gender discrimination claim.

## B.    Fourteenth Amendment Right to Intimate Association

Plaintiff also asserts a claim for an alleged violation of the Fourteenth Amendment right to intimate association. *Compl.* [#1] ¶¶ 175-90.

"In addition to a liberty interest in the right to marry, the Fourteenth Amendment protects a liberty interest in the right of familial association." *Johnson v. Pomeroy*, 294 F. App'x 397, 401 (10th Cir. 2008). "The freedom of intimate association is 'an intrinsic element of personal liberty.'" *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984)). "In *Roberts*, the Supreme Court held that application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members did not abridge the male members' freedom of intimate association or their freedom of expressive association." *Johnson*, 294 F. App'x at 401. "In describing the right of intimate association, the Court distinguished between family relationships and other types of personal relationships–such as those between members of the Jaycees–which are less likely to give rise to this constitutional protection." *Id.* "The Court recognized that 'choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State . . . .'" *Id.* (quoting *Roberts*, 468 U.S. at 617-18). "Among those intimate human relationships are '[f]amily relationships, [which] by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Johnson*, 294 F. App'x at 401 (quoting *Roberts*, 468 U.S. at 619-20).

At the time of Plaintiff's termination, the allegations show that the relationship between Plaintiff and Mr. McCullough was romantic, non-marital, and only about three months old. *Compl.* [#1] ¶¶ 54, 56. Both persons had separated from their spouses, but there are no allegations that either had divorced. *Id.* ¶ 57. Plaintiff and Mr. McCullough

-10-

had discussed marriage but there are no allegations of an engagement or of cohabitation. *Id.* The Court notes that the parties did not raise or brief in any material way whether this type of relationship is protected by the Fourteenth Amendment, and therefore the Court does not address this issue.

Instead, Defendant MSCS's argument focuses on whether the school's anti-nepotism policy "passes muster under rational basis review." *Motion* [#25] at 7. Although Defendant MSCS's suggestion that Plaintiff's Complaint is artfully pled in order to avoid dismissal is well-taken, the Court finds that, as Plaintiff argues, she has sufficiently alleged at this early stage of the case that the anti-nepotism policy was not the driving reason for her termination. *See Reply* [#29] at 2; *Response* [#28] at 6-7.

> Specifically, Ms. Douglas has alleged that at the time of her termination there was no violation of the anti-nepotism policy. *Compl.* [#1] ¶ 138. There was no violation of the policy when Ms. Douglas was terminated because Mr. McCullough had already resigned his position, and there could be no violation of an anti-nepotism policy because of a relationship with a former employee. *Id.* ¶ 123. After Mr. McCullough's resignation, the Board's only justification for continuing to investigate and propose disciplining Ms. Douglas was its desire to retaliate against Ms. Douglas for separating from her husband and entering into a close emotional relationship with Mr. McCullough and not comporting with the Board's stereotypes of how women should act or behave. *Id.* ¶ 124.

*Response* [#28] at 6-7. In addition, Plaintiff alleges "her close emotional relationship with Mr. McCullough did not fall within any of the four categories of 'close relationships' set forth in the [anti-nepotism] policy" and that prior to her, the school "had never enforced the anti-nepotism policy," despite Plaintiff's allegations that there had been other instances of such conduct which had been purposefully overlooked by the Board. *Compl.* [#1] ¶¶ 110, 139, 141. If, as Plaintiff plausibly alleges, the Board's purported termination of her was merely a useful cover-up for its real reasons, then Defendant MSCS's argument regarding whether

the school's anti-nepotism policy passes muster under rational basis review is inapplicable here. *Motion* [#25] at 7.

Accordingly, the Motion [#25] is **denied** to the extent Defendant MSCS seeks dismissal of Plaintiff's Fourteenth Amendment claim for violation of the right to intimate association.

## C.      Colorado Open Meetings Law

The Colorado Open Meetings Law ("OML"), Colo. Rev. Stat. § 24–6–401, states that "the formation of public policy is public business and may not be conducted in secret." Defendant MSCS argues that Plaintiff fails to demonstrate standing in connection with this claim.  Pursuant to Article III of the United States Constitution, federal courts only have jurisdiction to hear particular cases and controversies.  *Colo. Outfitters Ass'n v. Hickenlooper*, __F.3d__, __, Nos. 14-1290, 14-1292, 2016 WL 1105363, at *2 (10th Cir. Mar. 22, 2016) (citing *Susan B. Anthony List v. Driehaus*, __ U.S. __, __, 134 S.Ct. 2334, 2341 (2014)).  "To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2 (citing *Susan B. Anthony List*, 134 S. Ct. at 2341) (internal quotation marks omitted).

"[A] federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance." *Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).  "[T]he elements of standing 'are not mere

pleading requirements but rather an indispensable part of the plaintiff's case.'" *Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Therefore, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

In connection with this claim, Plaintiff alleges that on February 6, 8, and 9, 2014, Defendant MSCS held meetings at which a majority or quorum of the Board was in attendance, and that the Board took formal action at each of these meetings. *Compl.* [#1] ¶¶ 192, 194, 198.  Plaintiff asserts that the February 6, 2014 meeting was held without providing full notice to the public prior to the meeting. *Id.* ¶ 193.

During the February 8, 2014 meeting, Defendant MSCS took formal action with respect to Mr. McCullough's employment. *Id.* ¶¶ 122, 195.  Although it was possible for Defendant MSCS to include specific agenda information in the agenda for the meeting, Defendant MSCS failed to include any specific information about the formal action it intended to take with regard to Mr. McCullough's employment. *Id.* ¶ 196.  In other words, Plaintiff asserts that the information contained on the agenda of the February 8, 2014 meeting did not contain sufficient information to inform an ordinary member of the community that the termination of Mr. McCullough's employment was likely to be discussed at the meeting. *Id.* ¶ 197.

Further, during the February 9, 2014 meeting, Defendant MSCS took formal action with respect to Plaintiff's employment. *Id.* ¶ 199.  Although it was possible for Defendant MSCS to include specific agenda information in the agenda for the February 9, 2014 meeting, Defendant MSCS failed to include any specific information about the formal action

-13-

it intended to take with regard to Plaintiff's employment or her termination. *Id.* ¶ 200. Thus, Plaintiff asserts that the information contained on the agenda of the February 9, 2014 meeting did not contain sufficient information to inform an ordinary member of the community that the termination of Plaintiff's employment was likely to be discussed at the meeting. *Id.* ¶ 201. Plaintiff argues that because Defendant MSCS failed to comply with the requirements of the OML for these three meetings, the actions the Board took at the meetings were invalid. *Id.* ¶ 202-04.

Thus, in short, Plaintiff argues that Defendant MSCS violated the OML by failing to provide adequate notice to the public of the meetings held on February 6, 8, and 9, 2014. Citing to *Pueblo School District No. 60 v. Colorado High School Activities Association*, 30 P.3d 752 (Colo. App. 2000), Defendant MSCS argues that Plaintiff fails to demonstrate standing because she has failed to allege an injury in fact in connection with the lack of adequate notice for the public meetings. *Motion* [#25] at 11. In response, Plaintiff argues that she was injured because the notice of these meetings failed to "sufficiently inform[ ] the public of the nature of the business to be considered." *Response* [#28] at 9 (quoting *Town of Marble v. Darien*, 181 P.3d 1148, 1153 (Colo. 2008)).

However, neither party discusses the most recent decision from the Colorado Court of Appeals analyzing standing with respect to the OML. In *Wiesfield v. City of Arvada*, 361 P.3d 1069 (Colo. App. 2015), the issue was whether the plaintiff sufficiently alleged an injury in fact to a legally protected right in order to prove standing under the OML. The Court of Appeals found that the plaintiff had a "legally protected right to have the city council that represents him take action in an open manner rather than by secret ballot" and that the plaintiff's "lack of knowledge about how his council members voted is . . . precisely

-14-

the type of injury contemplated" by the OML.  *Wiesfield*, 361 P.3d at 1074.  In coming to

this conclusion, the Court of Appeals distinguished its earlier decision in *Pueblo*:

> In [*Pueblo*], a school district brought an action against a high school activities
> association, alleging that the association failed to comply with the notice
> provisions of the [OML] before conducting meetings in which it denied the
> school district's petition to change its sports classification.  A division of this
> court held that there was no injury in fact sufficient to convey standing
> because the school district conceded that it had actual notice of the meetings
> in question.  In this case, by contrast, the injury that Weisfield complains of
> has not been remedied by independent circumstances.  He submitted an
> affidavit to the district court stating that he does not know and has never
> known which city council members cast which ballots during the four rounds
> of secret ballot voting.  Defendants do not claim that Weisfield has
> independent knowledge of how each council member voted.  Thus, unlike the
> school district in *Pueblo*, Weisfield alleges an injury under the [OML] that
> remains unresolved. . . .  As we read *Pueblo*, the opinion merely notes that,
> in some circumstances, simply referencing a statutory cause of action is
> insufficient to demonstrate an injury in fact.  Because the school district in
> *Pueblo* had actual notice of the meetings, it was not injured by the
> defendant's failure to comply with statutory notice provisions.  Under those
> circumstances, where no injury resulted from the violation, merely
> referencing a statutory cause of action was insufficient to confer standing.
> In this case, however, Weisfield's lack of knowledge about how the council
> members voted is an injury under the [OML] that has not been remedied by
> external circumstances.

*Id.* at 1074-75 (internal citations omitted).

Here, the allegations undisputedly demonstrate that Plaintiff had knowledge of and

attended the meetings held on February 6 and 8.  *Compl.* [#1] ¶ 86 ("On February 5, 2014,

Mr. Solanki informed [Plaintiff] that he had decided to call a closed Board meeting for

February 6, 2014 to discuss her, and her relationships with her husband and Mr.

McCullough."), ¶ 95 ("[Plaintiff] attended the Board meeting on February 6, 2014 and

answered the Board's questions about her relationship with her husband and her

relationship with Mr. McCullough."), ¶ 101 ("Following that meeting, the Board held another

closed meeting on Saturday, February 8, 2014 to discuss Ms. Douglas and her relationship

with Mr. McCullough."), ¶¶ 107-08 ("The School's attorney, Eric Hall, was present at the February 8, 2014 closed meeting" and "discussed the anti-nepotism policy with the Board and [Plaintiff], and asked [Plaintiff] about the anti-nepotism policy."), ¶ 112 ("During the February 6 and February 8, 2014 meetings, [Plaintiff] was asked numerous . . . invasive and personal questions about her marriage."). Pursuant to *Weisfield* and *Pueblo*, Plaintiff's allegations that she had actual notice of and attended the meetings on February 6 and 8 are fatal to her OML claim in the absence of any other specified injury in fact. Even assuming that Defendant MSCS failed to comply with the statutory notice requirements, Plaintiff has not demonstrated how she was injured by this failure, and thus she lacks standing to assert her OML claim with respect to those two meetings. Plaintiff's conclusory allegation to the contrary stating that *she* was injured because the *public* was not informed of the meetings is simply insufficient to demonstrate an injury in fact. *See Compl.* [#1] ¶ 205 ("As a consequence of Defendant MSCS's invalid actions and illegal conduct, Plaintiff has sustained significant injuries, damages, and losses.").

The Court comes to the same conclusion with respect to the February 9 meeting, but for different reasons, i.e., Plaintiff has not affirmatively made allegations sufficient to demonstrate standing. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (stating that standing cannot be inferred, and that a plaintiff who fails to allege facts essential to show jurisdiction has no standing). Plaintiff provides allegations regarding the asserted insufficiency of the notice of the meeting to the public. *See Compl.* [#1] ¶ 126 ("The School did not properly post the notice of this meeting as required by the Colorado Open Meetings Law."), ¶ 127 ("The notice of the February 9, 2014 Board meeting was not posted at least 24 hours prior to the start of the meeting."), ¶ 128 ("The notice of the

February 9, 2014 Board meeting was not posted in a public place where it was accessible to, or could be viewed by, members of the public."), ¶ 129 ("Although it was possible for the school to include specific agenda information in the notice of the February 9, 2014 Board meeting, the notice did not include specific agenda information about the action that was to occur at the meeting.").  However, Plaintiff does not allege whether she personally had sufficiently advance knowledge of the February 9 meeting or whether she attended it.  *See Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2 (stating that "plaintiffs bear the burden of establishing standing") (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *see also Pueblo*, 30 P.3d at 753 (noting that the plaintiffs did "not claim they did not have notice of the . . . meetings where the petition was denied").

Plaintiff also provides allegations regarding an injury suffered in connection with the February 9 meeting.  *See Compl.* [#1] ¶ 130 ("During the February 9, 2014 meeting, the Board decided to terminate [Plaintiff's] employment."), ¶ 131 "The Board made that decision without regard for the School's policies and State law.").  Colo. Rev. Stat. § 24–6–402(9)(a) provides that "[a]ny person denied or threatened with denial of any of the rights that are conferred on the public by [the OML] has suffered an injury in fact . . . ."  The statute is intended to "afford the public access to a broad range of meetings at which public business is considered."  *Colo. Off-Highway Vehicle Coalition v. Colo. Bd. of Parks & Outdoor Recreation*, 292 P.3d 1132, 1136 (Colo. App. 2012) (quoting *Bd. of Cty. Comm'rs v. Costilla Cty. Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo. 2004)).  "In light of this purpose, we interpret the OML broadly to further the [Colorado] General Assembly's intent to give citizens a greater opportunity to meaningfully participate in the decision-making process by becoming fully informed on issues of public importance."  *Colo. Off-Highway Vehicle*

-17-

*Coalition*, 292 P.3d at 1136 (citing *Bd. of Cty. Comm'rs*, 88 P.3d at 1192).

However, Plaintiff does not allege whether the actions of the Board in failing to give proper notice foreclosed her opportunity to meaningfully participate in the February 9, 2014 meeting, which resulted in her termination. *See Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2 (stating that "plaintiffs bear the burden of establishing standing") (citing *Raines*, 521 U.S. at 818). Standing requires "a sufficient causal connection between the injury and the conduct complained of." *Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2. In other words, the injury must be "fairly . . . trace[able] to the challenged action of the defendant . . . ." *Lujan*, 504 U.S. at 560 (citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (citation and internal quotation marks omitted). Here, although Plaintiff alleges that the actions taken at the February 9, 2014 meeting violated the OML, she does not allege that, but for that meeting, she would not have been terminated. The allegations do not support an inference that, had there been appropriate public notice, there was a possibility that she or others could have participated in such a way that she may not have been terminated. In other words, although she alleges that the public was not informed of the meeting, she has not alleged how this caused the injury she has actually alleged, i.e., her termination. Thus, the Court finds that Plaintiff has insufficiently alleged causation. *See Colo. Outfitters Ass'n*, 2016 WL 1105363, at *2 (stating that "plaintiffs bear the burden of establishing standing") (citing *Raines*, 521 U.S. at 818).

Accordingly, Plaintiff's Claim Three pursuant to the OML is **dismissed without**

**prejudice**.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").[5]

## D.  Colorado Lawful Activities Statute

Colorado's Lawful Off-Duty Activities Statute ("LODAS"), Colo. Rev. State. § 24–34–402.5, is "an exception to an employer's general right to terminate an at-will employee without consequence."  *Williams v. Rock–Tenn Servs., Inc.*, __ P.3d__, __, No. 14CA2329, 2016 WL 611666, at *1 (Colo. App. Feb. 11, 2016).  LODAS "prohibits an employer from terminating an employee 'due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours.'"  *Id.* (quoting Colo. Rev. Stat. § 24–34–402.5(1)).  "[T]he general purpose of section 24–34–402.5 is to keep an employer's proverbial nose out of an employee's off-site off-hours business[.]"  *Williams*, 2016 WL 611666, at *1 (quoting *Coats v. Dish Network, L.L.C.*, 303 P.3d 147, 151 (2013), *aff'd*, 350 P.3d 849 (2015)).  Two statutory exceptions to this rule exist, however.  An employer is still permitted to terminate an employee if the activity at issue "(a) [r]elates to a bona fide occupational requirement or is reasonably and rationally related to the employment activities and responsibilities of a particular employee or a particular group of employees, rather than to all employees of the employer; or (b) [i]s necessary to avoid a conflict of interest with any responsibilities to the employer or the appearance of such a

---

[5]  To the extent Plaintiff believes she can provide additional allegations in order to sufficiently allege standing with respect to the February 9, 2014 meeting, she may file a motion to amend the Complaint **on or before April 29, 2016**.

conflict of interest." *Williams*, 2016 WL 611666, at *1 (quoting Colo. Rev. § 24–34–402.5(1)).

Defendant MSCS argues that the school's anti-nepotism policy and its application to Plaintiff were permissible under each of the two statutory exceptions to LODAS. *Motion* [#25] at 7. As noted previously, Plaintiff alleges that the Board's citation to Defendant MSCS's anti-nepotism policy was a facade. The Court already found these allegations to meet the minimum threshold of plausibility at this early stage of the case. Given these allegations, the issue then becomes whether the Board could have legally terminated Plaintiff's employment under the LODAS even in the absence of the anti-nepotism policy. While the parties allude to this issue, it is not argued or briefed in any material way outside of the context of the anti-nepotism policy. *See, e.g.*, *Reply* [#29] at 4. Thus, the Court finds that Plaintiff's LODAS claim should not be dismissed at this time.

Accordingly, the Motion [#25] is **denied** to the extent Defendant MSCS seeks dismissal of Plaintiff's LODAS claim.

## IV.  Conclusion

For the foregoing reasons, the Motions [#25] is **GRANTED in part and DENIED in part**. The Motion is **granted** to the extent that claim three under the Colorado Open Meetings Law, Colo. Rev. Stat. § 24–6–401, is **dismissed without prejudice**. The Motion is **denied** in all other respects.

Dated April 15, 2016

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge